SERAFÍN MATOS RAMÍREZ, menor de edad, representado por su defensor *ad litem* EMILIO MATOS RAMÍREZ, demandante y apelado, *v.* DAVID ANTONGIORGI, JR., EMILIO ENRIQUE PABÓN, SALIM A. FARAGE y GREAT AMERICAN INDEMNITY CO. DE NEW YORK, demandados y apelantes los dos últimos.

Núm. 8871.—*Sometido:* Abril 13, 1944. *Resuelto:* Julio 3, 1944.

*Hugh R. Francis* y *F. J. Pérez Almiroty,* abogados de los apelantes; *Juan Alemañy Sosa,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La presente es una apelación contra sentencia por $3,000 dictada a favor del demandante y en contra de dos de los demandados, Salim A. Farage y Great American Indemnity Co. Se hizo responsable a Farage a causa de ser éste dueño del automóvil manejado por Emilio Enrique Pabón, que fué uno de los dos automóviles que lesionó al demandante en el accidente que trajo como resultado este pleito. Se hizo responsable a la Great American Indemnity Co. bajo una póliza de seguro contra accidentes que cubría el automóvil de Farage. Éste y la Compañía son los apelantes aquí.

David Antongiorgi, Jr., otro demandado, era el dueño y chófer del otro automóvil envuelto en el accidente en cuestión. Mediante el pago de $900, se le descargó de su alegada responsabilidad. Esta transacción exigía la aprobación de la corte de distrito toda vez que el demandante era un menor. La corte de distrito dictó una resolución aprobando los términos de la transacción como que compensaba al demandante por los daños recibidos por él al ser arrollado por el automóvil de Antongiorgi. La resolución de la corte inferior expresamente decía que el caso continuaría contra los otros demandados.

En los primeros casos del derecho común, el descargar a una persona que en unión a otras han causado un daño, en muchas ocasiones descargaba a las demás, independientemente de la intención de las partes. El *Restatement* de *Torts* señala que esto "frecuentemente resultaba en el descargo no intencional y libre de costo de una de las personas que ocasiona el daño" y que "la Regla no es consistente con el punto de vista moderno americano".(¹) El artículo 885 del Restatement establece por tanto la regla de que "un descargo válido de una persona que comete un daño . . . descarga a todas las otras por el mismo daño, *a no ser que las partes que concurran en la transacción convengan en que ésta no descargará a las otras . . .*". (Bastardillas nuestras).

_____

(¹) Torts, Restatement, Comentarios sobre la Sección 885, página 461, 2.

Es innecesario que determinemos en este caso si dicha regla rige en Puerto Rico (Véase artículo 1096, Código Civil, Edición 1930). Asumimos, sin decidirlo, que de conformidad con el descargo aquí envuelto, el demandante podría continuar su acción contra los otros codemandados, siempre y cuando que el demandante estableciera todos los requisitos de un caso de daños y perjuicios, incluyendo la negligencia de tales otros codemandados y que dicha negligencia fué la causa próxima de todos o algunos de los daños recibidos por el demandante.

▇ Los apelantes alegan que la corte de distrito cometió error al no determinar y fijar en su sentencia y opinión la responsabilidad del demandado Antongiorgi. La corte inferior dejó de hacer esto, aparentemente bajo la teoría de que Antongiorgi había obtenido el descargo del demandante y que en su consecuencia nada tenía que ver con el caso. Como ya se ha indicado, aceptamos, como una proposición de ley a los fines de este caso, que Antongiorgi podía ser eliminado del pleito y que éste podía entonces continuar contra los otros codemandados. Pero al considerar las cuestiones que quedan en el caso para resolver, v. g., (1) la alegada negligencia del chófer del otro automóvil y (2) si tal negligencia fué la causa próxima de todas o de algunas de las lesiones que se alega recibió el demandante, las actuaciones de Antongiorgi que culminaron en que éste arrollara al demandante eran, como más adelante veremos, sumamente pertinentes para determinar si el chófer del segundo automóvil fué negligente y qué lesiones, si algunas, fueron causadas por él. La corte de distrito por tanto debió haber dado minuciosa consideración a las actuaciones de Antongiorgi.

▇ También indicamos, antes de enfrascarnos en una discusión de los hechos de este caso, que si se demostró en el juicio que Antongiorgi, quien había sido relevado de responsabilidad, fué negligente según se alegaba, por haber golpeado primeramente al demandante, muy bien pudo hacerse responsable a Antongiorgi, bajo todas las circunstancias del caso, de todas las lesiones recibidas por el demandante, incluyendo

aquéllas ocasionadas solamente por el segundo automóvil. "Es importante indicar que existen casos en que el primero que ocasiona el daño será responsable por el daño en total, mientras que el segundo no responderá. Si un automóvil negligentemente manejado por el demandado *A* arrolla al demandante, le fractura el cráneo y lo abandona en la carretera y poco después un segundo automóvil manejado negligentemente por el demandado *B* le pasa por encima y le fractura una pierna, *A* será responsable por ambas lesiones, toda vez que al abandonarse al demandante en la carretera, era razonable prever que un segundo automóvil lo arrollaría." *Prosser on Torts*, cap. 8, pág. 336. Pero el hecho de que Antongiorgi pudiera haber sido responsable de todas las lesiones recibidas por el demandante, incluyendo las lesiones ocasionadas por el automóvil manejado por Pabón y del cual Farage era dueño, no impide el que se continúe el pleito contra este último por las lesiones causadas por el segundo automóvil. Como lo indica Prosser en el ejemplo citado "*B* debe ser responsable sólo por la pierna fracturada, toda vez que no tuvo nada que ver con la fractura del cráneo y no la podía prever o evitar . . ."(²) Por tanto debemos echar a un lado la cuestión de si podía hacerse responsable a Antongiorgi por todas las lesiones recibidas, y determinaremos si puede hacerse responsable a Farage, de acuerdo con los hechos de este caso, por las lesiones ocasionadas por su automóvil. Posponiendo por el momento la cuestión de si las lesiones que se alega fueron ocasionadas separadamente por los dos automóviles fueron o pudieron ser segregadas mediante prueba satisfactoria, consideraremos en primer lugar la cuestión más importante de este caso: ¿Fué Pabón negligente al manejar el automóvil de Farage?

Nos confrontamos al empezar con una seria contradicción en el testimonio de los testigos de los demandantes. En su demanda alega el demandante que un automóvil que

---

(²) Véanse los casos citados en el escolio 32, Prosser, *supra*, a la página 334, y el escolio 10, *infra*.

iba de Mayagüez a San Germán guiado descuidada y negligentemente por el demandado Antongiorgi a una velocidad de 50 kilómetros por hora lo arrolló mientras cruzaba la carretera,[3] lanzándolo contra el pavimento, y dejándolo inconsciente. Sin embargo, durante el juicio el demandante y su único otro testigo que declaró en cuanto a este punto afirmaron que el demandante estaba parado cerca de la zanja en o cerca del sitio marcado con una X en el croquis que se inserta en el margen[4] hacia la derecha yendo de Mayagüez a San Germán, con su carrito de refrescos, y que nunca pensó

---

[3] Esta alegación no indica si cruzaba la carretera de Sur a Norte o vice versa.

[4]

cruzar la carretera cuando fué arrollado por el carro de Antongiorgi.

Aparentemente la corte inferior creyó totalmente, no sólo el relato del demandante y de este testigo en cuanto a cómo ocurrió el primer episodio—de que el automóvil de Antongiorgi arrolló y lanzó contra el pavimento al demandante—si que también toda la teoría del demandante. La corte de distrito resolvió lo siguiente:

"De las alegaciones de las partes y la evidencia practicada, la Corte encuentra probado que el día 11 de marzo de 1937, mientras el demandante Serafín Matos Ramírez, quien entonces tenía 13 años de edad se encontraba atendiendo a la venta de artículos varios en su carrito de mano, a su derecha en la carretera, frente a la entrada de la Central Eureka, en el kilómetro 196, hectómetro 6, de la carretera insular Núm. 2, en el municipio de Hormigueros, al tratar de cambiar de posición en el carro, recibió un golpe con la parte derecha del bompe de un automóvil que iba de Mayagüez para San Germán, manejado por David Antongiorgi, Jr., y fué lanzado hacia la parte izquierda en la carretera, sobre el pavimento de ésta, donde quedó en estado inconsciente, y encontrándose así postrado e indefenso sobre dicha carretera, fué arrollado por un automóvil propiedad del demandado Salim A. Farage, manejado por el otro demandado Enrique Pabón, . . . y quien conducía dicho carro a una velocidad excesiva de acuerdo con las circunstancias existentes en ese sitio en aquel momento debido a la aglomeración de gente frente a la entrada de la Central que se encontraba saliendo y vehículos que entraban a, y salían de la misma, y quien no tomó precaución alguna en defensa y protección de las personas y propiedades presentes en aquel sitio.

"Cualquier conflicto que pudiera existir en la prueba sobre la forma como ocurrió el accidente, la Corte lo resuelve a favor de la parte demandante por ser más razonable y lógica la versión de sus testigos que la que resulta de la declaración del único testigo de la parte demandada, el co-demandado Emilio Enrique Pabón, cuyo testimonio tiene como único fin tratar de probar que no medió negligencia de su parte en el accidente; pero que terminó por reconocer que pudo haber parado y no arrollar al demandante, pero que por uno de esos errores que uno comete no creyó necesario parar y lo pisó. La causa próxima, única e inmediata del accidente fué, pues, la

negligencia del demandado Emilio Enrique Pabón, sin que mediara culpa o negligencia alguna por parte del demandante."(5)

Por otro lado, Pabón, cuya extensa declaración aparentemente rechazó la corte de distrito, dijo que inmediatamente antes del accidente el demandante cruzó rápidamente la carretera de Norte a Sur (según indica la línea quebrada de Y a X en el croquis), cuando fué arrollado en el sitio X por el guardalodo delantero izquierdo del automóvil de Antongiorgi y fué lanzado hacia la misma dirección en que venía —Z—cuando lo arrolló el carro de Pabón. La declaración de Pabón fué en parte como sigue:

"P. ¿Qué le ocurrió? Dígale a la corte qué fué lo que le ocurrió. R. Pues viniendo yo de San Germán para Mayagüez en esa carretera como cuarenta o cincuenta metros antes de llegar a la entrada para la Central Eureka ví la aglomeración de personas que transitaban por ahí, como a las doce y cuarto, quité la gasolina y reduje la velocidad a todo lo más que yo creí necesario. Vi un *truck* que salía del camino que conduce al central . . . Y por el lado que yo vi el *truck* cruzó el niño Serafín Matos a toda carrera, sin pararse a ver si venía alguien en una dirección o en otra dirección, y al cruzar allí el carro de David Antongiorgi le dió un cantazo tan fuerte que lo tiró debajo del mío. Esa fué una cuestión relámpago allí, porque de lo contrario yo hubiera tenido tiempo de parar, porque yo venía demasiado poco a poco porque como la ley misma lo prohibe . . . P. ¿De dónde salió este muchacho a cruzar? R. El salió del central para la carretera, a cruzar la carretera para donde él dijo que tenía un puestecito de refrescos . . . P. ¿Cómo a qué velocidad venía usted cuando ocurrió el accidente? R. Yo venía poco a poco. P. ¿A cuántos kilómetros por hora? R. Como a doce kilómetros, diez o doce kilómetros . . . "

Como dijimos una vez en otro caso, "Los hechos físicos desarrollados en el juicio nos convencen de que el accidente no pudo haber ocurrido en la forma relatada por los testigos del demandante"(6) en cuya declaración descansó presumi-

---

(5)La porción arriba copiada de la opinión de la corte de distrito de cinco páginas contiene el pronunciameinto total de la corte inferior en cuanto a la negligencia de Pabón; el resto de la opinión trata de asuntos que nada tienen que ver con la negligencia de Pabón.

(6)*Rivera* v. *Graham*, 34 D.P.R. 1, 3.

blemente la corte de distrito para llegar a sus conclusiones. Si el automóvil de Antongiorgi, que iba a una velocidad excesiva, golpeó al demandante con el lado derecho del para-golpes en o cerca del punto X, es irresistible la conclusión de que el cuerpo del demandante no pudo haber sido lanzado hacia el punto Z, como resolvió la corte inferior. Por tanto era físicamente imposible que el accidente ocurriera como la corte de distrito dice que ocurrió. Si Serafín Matos fué golpeado por el para-golpes derecho del automóvil de Antongiorgi en el punto X, su cuerpo pudo haber sido lanzado únicamente hasta algún punto dentro del área sombreada, y no hacia el punto Z. El derecho de una corte de distrito a resolver conflictos en la declaración de los testigos no incluye el derecho a resolver que ocurrió lo físicamente imposible.

Sin embargo, la imposibilidad física de la versión de los testigos en cuanto a como fué golpeado el demandante por el automóvil manejado por Antongiorgi, no es decisiva en este caso. La cuestión primordial aquí es si Pabón fué negligente en el manejo del automóvil de Farage cuando éste golpeó al demandante mientras este último permanecía inconsciente sobre la carretera después de haber sido arrollado por el automóvil de Antongiorgi. Y es aquí precisamente, donde finalmente zozobra el caso del demandante contra los apelantes— sencillamente nada hay en el récord que justifique la conclusión de la corte inferior de que Pabón fué negligente al manejar el automóvil de Farage. Tampoco, podríamos añadir, hay algo en el récord que justifique la manifestación de la corte de distrito de que Pabón ''terminó por reconocer que pudo haber parado y no arrollar al demandante . . . ''(⁷)

---

(⁷) El pasaje del récord sobre el que la corte de distrito aparentemente basó esta conclusión aparece al final de un largo e intenso contrainterrogatorio de Pabón y fué en esencia el lenguaje del abogado más bien que el de Pabón. El récord demuestra lo siguiente:

''R. ...no es que yo no pudiera parar.

''P. ¿Y qué fué entonces?

''R. Es que uno cree muchas veces que uno no va a caer en ciertos errores. Eso le puede pasar a usted y al señor Juez que también guía carro. Uno cree

Hemos examinado cuidadosamente las declaraciones de todos los testigos del demandante, y nada encontramos en el récord para poder basar correctamente la sentencia a favor del demandante. La declaración del propio demandante no esclarece el problema, toda vez que nunca vió el automóvil de Farage.

Carlos Mercado, dueño del carrito, fué el testigo que dió la versión del accidente que, como hemos visto, era físicamente imposible. Y si bien declaró que Pabón guiaba ligero, también manifestó que ambas cosas ocurrieron casi simultáneamente. En el contrainterrogatorio contestó pregunta tras pregunta, héchasle en busca de detalle, que él no pudo "apreciar" esas cosas. Además, declaró una y otra vez en el contrainterrogatorio que él no vió el segundo automóvil golpear al demandante, pero que "sintió" el impacto.

Pascual Beauchamp declaró que Mercado estaba en su tienda buscando cambio al momento de ocurrir el accidente; que Mercado estaba de espaldas a la carretera; y que ninguno de ellos vió el accidente, sino que "sintieron el golpe".

---

que no va a arrollar una persona yendo a cinco kilómetros que una vaya y sucede que lo arrolla.

"P. ¿Entonces usted pudo haber parado, porque iba tan despacio, pero por esos errores que uno comete...?

"R. Yo no creí que hubiera necesidad de parar."

El significado de este pasaje no es el que le atribuye la corte de distrito. Al emplear en su declaración la palabra "error", es obvio que Pabón no quiso decir "negligencia" de su parte, sino que sencillamente como cuestión de retrospección ahora reconoce que si hubiera parado completamente,. el accidente no hubiera ocurrido. Pero la cuestión es si, al momento del accidente, pudo haber anticipado razonablemente que tal era la situación. Todo el curso de la prueba, como veremos, tiende a probar lo contrario; todas las declaraciones, incluyendo las de los testigos del demandante, fueron al efecto de que ambos episodios ocurrieron casi simultáneamente—que, en efecto, el muchacho fué lanzado bajo sus ruedas antes de que Pabón tuviera una oportunidad de parar su automóvil.

Pero aun si este pasaje de la prueba pudiera interpretarse literalmente como que significa lo que la corte de distrito concluyó, creemos que da una idea equivocada del caso arrancarlo del contenido total y descansar únicamente en él, como lo hizo la corte de distrito, como representativo de la versión del accidente dada por Pabón, especialmente cuando éste de hecho declaró, extensamente, como hemos visto, en cuanto a que no tenía culpa. En síntesis, no podemos aceptar esta conclusión festinada de la corte de distrito como un análisis propio de la declaración de Pabón.

El policía Francisco Trinidad declaró que el automóvil de Antongiorgi le había rebasado a una velocidad excesiva, pero que él ni vió el automóvil de Pabón ni el accidente.

La declaración de los testigos mencionados fué toda la prueba que el demandante adujo en cuanto a cómo ocurrió el accidente. La prueba del demandado sobre este punto consistió únicamente en la declaración de Pabón que ya se ha descrito. Es de importancia indicar en relación con esto que, en análisis final, Pabón fué de hecho el único testigo ocular del accidente.

Estamos satisfechos de que el récord razonablemente permite sólo una conclusión: que Pabón no fué negligente; que la negligencia de Antongiorgi colocó al demandante en una posición de peligro inminente e inextricable, por cuyos resultados podía hacerse responsable a Antongiorgi solamente; y que Pabón se enfrentó a una situación de emergencia súbita y extraordinaria que no podía haber previsto, el resultado de la cual ocasionó ulteriores lesiones al demandante. "Un motorista no está obligado a anticipar los actos inesperados de personas que no están en el curso de su ruta y que de súbito se colocan en el mismo" (Huddy, *Cyclopedia of Automobile Law,* Vol. 5, pág. 111; véase *Collier* v. *Varino,* 96 So. 500 (La. 1923)). El resultado efectivo es que mientras la actuación de Pabón al arrollar al demandante intervino en la cadena de sucesos iniciada por la negligencia de Antongiorgi, legalmente hablando, esta última fué la única causa del accidente. La mera manifestación de la corte de distrito, sin ninguna explicación con referencia a cómo arribó a dicha conclusión—que "la causa próxima, única e inmediata del accidente fué, pues, la negligencia del demandado Pabón"—carece enteramente de fundamento y no podemos aceptarla.(8)

(8) Nuestra conclusión a este respecto está robustecida por la naturaleza de la prueba del demandante. Por ejemplo, ninguno de los testigos del demandante de hecho *vió* el segundo accidente; sólo el demandado Pabón declaró en cuanto a lo que vió—los otros testigos *oyeron,* pero no *vieron,* lo que ocurrió. De igual manera, Mercado, que era el testigo principal del demandante, se enredó en una serie de contradicciones: declaró que vió venir el automóvil de Antongiorgi;

Como siempre, somos altamente renuentes a revocar la sentencia de la corte de distrito a causa de alegados errores en relación con las conclusiones de hecho. Pero, si sostuviéramos la sentencia en este caso, en efecto crearíamos una regla de responsabilidad sin que haya culpa en casos de accidentes de automóviles. Algunas personas han recomendado se establezca esta regla por legislación, acoplándola con seguro obligatorio. Quizá llegue el día en que nuestra Legislatura dé tal paso. Mientras tanto, no podemos permitir que subsista una sentencia que no está sostenida por prueba de que los demandados fueron negligentes.

Creemos conveniente decir algo en relación con la forma en que la corte inferior estimó los daños en este caso. Dijo la corte de distrito:

"En cuanto a los daños sufridos por el demandante en el accidente, la corte solamente tiene ante sí la prueba presentada por el demandante. En verdad que ésta incluye las lesiones que recibiera el demandante por ambos carros; pero en la demanda enmendada aquéllas figuran alegadas separadamente y de la posición que ocupaba el demandante al recibir unas y otras lesiones, la naturaleza de éstas y las circunstancias en que las mismas fueron producidas, lo lógico es que las lesiones más graves, como la fractura de la pierna, la dislocación del brazo, y la herida y los golpes sobre el pecho, además de muchas de las heridas y contusiones en las otras partes del cuerpo, se las produjo el carro del demandado Sr. Farage."

Nuevamente carece el récord de prueba para justificar esta distribución de la lesiones recibidas por el demandante entre los dos episodios. Los dos incidentes sucedieron, como hemos visto, casi simultáneamente. Desde luego, nadie examinó al demandante después de haber sido arrollado por Antongiorgi y antes de que Pabón lo arrollara. La declaración del doctor no cubrió este punto. En resumen, nada

pero también declaró que estaba mirando hacia San Germán, lo cual quiere decir que le daba la espalda al carro de Antongiorgi cuando éste venía. En verdad, Beauchamp, testigo del demandante, declaró, como hemos visto, que Mercado no podía haber visto dicho episodio. Y el récord demuestra ampliamente su incapacidad para recordar cómo quedaron las cosas y que él no "apreció" nada en detalle.

hay en el récord que pudiera dar lugar a una conclusión como la de la corte de distrito. No resolvemos que nunca es posible distribuir tales lesiones entre dos automóviles.(⁹) Sólo resolvemos que en este caso no se presentó prueba sobre la cual se pueda basar tal distribución.

El demandante transigió su caso con Antongiorgi por $900;(¹⁰) y dejó de probar negligencia por parte de Pabón. *Por tanto, se impone la revocación de la sentencia a favor del demandante y dictaremos nueva sentencia a favor de los demandados Farage y Great American Indemnity Co.*

El Juez Presidente Sr. Travieso no intervino.

---

(⁹)''Cuando puede encontrarse una base lógica para hacer una distribución aproximada y práctica que limite la responsabilidad de un demandado a aquella parte del daño que de hecho ha causado, puede esperarse que la distribución será hecha.'' (Prosser, *supra,* a la página 327.)

(¹⁰)No está ante nos el problema de si el descargo obtenido por Antongiorgi cubre solamente los daños ocasionados por su automóvil. Sin embargo, en vista del hecho de que en este caso están envueltos los derechos de un menor, no creemos impropio indicar que de resolverse que el descargo fué exclusivamente para dicho propósito, concebiblemente el demandante todavía tenga una causa de acción contra Antongiorgi por el fundamento de que su negligencia fué la causa próxima de las lesiones ocasionadas por el automóvil guiado por Pabón. Véase, Prosser, *supra,* pág. 336. Véanse también, Eldredge, *Modern Tort Problems,* Cap. VIII, *Culpable Intervention as Superseding Cause,* pág. 205, et seq.; McLaughlin, *Proximate Cause,* 39 Harv. L. Rev. 149, 178 et seq.; Bohlen & Harper, *Torts,* págs. 272–287.

Quizás la mejor discusión de las muchas cuestiones legales que este caso contiene, algunas de las cuales no tenemos que resolver aquí, se encuentra en Prosser, *Joint Torts and Several Liability,* 25 Calif. L. Rev. 413. Y *cf. González v. White Star Bus Line Inc.,* 53 D.P.R. 615, 659; *Cubano v. Jiménez et al.,* 32 D.P.R. 167; *Cruz et al. v. Frau,* 31 D.P.R. 92.