Pesante Martínez, Juez Ponente
*806 TEXTO COMPLETO DE LA SENTENCIA
Mediante el presente recurso de apelación se nos solicita revoquemos una sentencia del Tribunal de Primera Instancia, Sala Superior de Humacao, en la que se declaró sin lugar una demanda por daños y perjuicios al resolver que no aplicaba una negligencia comparada debido a que los daños sufridos por el demandante se debieron exclusivamente a su conducta negligente.
I
El 29 de junio de 1995 José Julio Rodríguez Cruz, instó la presente acción reclamando daños y perjuicios alegando que había tenido un accidente que lo dejó incapacitado y que el mismo se debió a la negligencia del demandado, Rafael Cuadrado Toledo, que realizó un viraje indebido en forma de "U", invadiendo el carril por el que él transitaba, provocando que éste impactara con su motora al automóvil del demandado.
El demandante presentó como parte de su prueba testifical, además de su testimonio, al Oficial de la Policía de Puerto Rico, Sr. Ramón Cruz Suárez, quién respondiendo a un mensaje que recibiera por el radio teléfono de su patrulla acudió a investigar el accidente y a la Dra. Norma Villanueva, como perito interpretativo de los récords médicos. La prueba del demandado consistió únicamente de su testimonio.
Según se desprende de la exposición narrativa de la prueba, el Oficial Cruz Suárez declaró que el 7 de abril de 1994 a eso de las 3:00 P.M., mientras patrullaba por el área de Humacao recibió un mensaje donde le indicaban que en la carretera Núm. 3, Km. 85, H-7 en Humacao había ocurrido un accidente y que se personara al lugar de los hechos. El lugar se encontraba a poca distancia de la intersección en la carretera Núm. 3 que conduce hacia el desarrollo turístico Palmas del Mar Resort y el Barrio Candelera de Humacao.
Este declaró que al llegar al lugar de los hechos observó los vehículos accidentados que resultaban ser un Cadillac Dorado del 1983, tablilla número 1-03990 que era conducido por el demandado y una motora Honda H700 del 1986 que era conducida por el demandante. Aseveró que el lugar del accidente está en una zona rural; tiene un límite de velocidad de 40 millas por hora; la carretera es recta y llana; que al momento del accidente la carretera, que era de asfalto, se encontraba totalmente seca; y que la misma no tenía ningún defecto visible.
Declaró también "[q]ue don Rafael Cuadrado Toledo, tanto por la investigación como por sus admisiones resultó que inició la marcha, para hacer un viraje en forma de 'U', razón por la cual él *807 invadió el carril a don José Julio Rodríguez Cruz, quien conducía su motora por el carril que conduce de Yabucoa hacía[sic] Humacao. Que el impacto de la motora con el vehículo resultó ser en la puerta izquierda del chofer, a la parte baja de ésta, con todo el frente de la motora que conducía don José Julio Rodríguez Cruz. Continua [sic] manifestando que se entrevistó con don Rafael Cuadrado, quien allí el aceptó que iba a virar en "U"; que no vio que viniera vehículo alguno, mucho menos la motora, y allí ocurre el accidente... Que don José Julio Rodríguez, le manifestó que se había detenido en el semáforo que se encuentra en la intersección que conduce hacía [sic ] el desarrollo turístico de Palmas del Mar cuando cambió la luz y comenzó a caminar, a poca distancia, el vehículo conducido por el señor Cuadrado, de súbito, le invade el carril, provocando el inevitable impacto."
Atestó que encontró el debris del accidente como a un pie de la línea blanca que divide los carriles que conducen de Humacao hacia Yabucoa y que se notaba una hendidura en el asfalto cerca de las inmediaciones donde ocurrió el accidente.
De otra parte, el demandante declaró que el 7 de abril de 1994 se encontraba haciendo unas gestiones para su patrono y que cuando regresaba de las mismas, mientras transitaba por la intersección que conduce de la carretera Núm. 3 hacia al Barrio Candelera de Humacao sufrió un accidente. Atestó que se había detenido ante la luz roja del semáforo y que era el primer vehículo en el carril que conduce de Yabucoa a Humacao.
Cuando reanudó la marcha se topa con que un "poco más adelante el carro que conducía don Rafael Cuadrado Toledo, que se encontraba estacionado a la derecha de dicha carretera en dirección de Yabucoa hacia Humacao, dio un viraje en "U" invadiéndole el carril y ocasionando con ello que su motora impactara la parte baja de la puerta del chofer del Cadillac que conducía el señor Cuadrado."
Este declaró que el Cadillac lo arrastró hacia su izquierda, o sea, dentro del carril que conduce de Humacao hacia Yabucoa. Aseguró que él no contribuyó de forma alguna al accidente. A tales efectos, en el contrainterrogatorio se le preguntó sobre el golpe que le dió a la parte baja de la puerta del carro y éste contestó que al maniobrar para evitar el accidente la motora se desplazó hacia el otro carril. Negó que cuando el semáforo cambió a verde éste condujera su vehículo por el carril que conduce de Humacao hacia Yabucoa, en otras palabras, por el carril contrario.
Por otro lado, el demandado manifestó que se encontraba haciendo unas gestiones y que decidió estacionar su vehículo en el estacionamiento de la iglesia. Cuando se dispuso a salir del estacionamiento esperó a que los carros que discurrían por el carril de Yabucoa a Humacao le permitieran pasar. Cuando inició la marcha y llegó al carril que conduce de Humacao a Yabucoa se percató que el demandante venía transitando el carril a alta velocidad y acto seguido le impactó la puerta. Declaró que su vehículo fue impactado en la parte baja de la puerta del chofer porque la motora se descontroló y discurrió de lado por la carretera. Aceptó que salía de un estacionamiento que se encuentra al lado del carril contrario que conduce de Humacao hacia Yabucoa con la intención de doblar a la izquierda para ir a su casa.
Con esta prueba ante su consideración y luego de ponderar la credibilidad que le merecieran los distintos testimonios presentados, el Tribunal de Primera Instancia concluyó que el demandante conducía su motora en contra del tránsito para evitar una fila de vehículos que se encontraban en su carril y que la causa próxima del accidente se debió a su exclusiva negligencia por discurrir por un carril que no le correspondía. Entre sus determinaciones de hechos destacó que el impacto en la puerta del vehículo del demandado ocurrió después de que a éste le habían cedido el paso y que el debris y la marca de la motora se encontraron como a diez (10) o quince (15) pies antes del lugar del accidente y todo dentro del carril contrario en donde debía discurrir la motora. También, mencionó que el demandante debió estar como a dos (2) pies de la línea del centro y señaló que el mismo policía dijo que las motoras acostumbraban a transitar entre carriles. En vista de lo anterior, declaró sin lugar la demanda.
Inconforme con el dictamen del foro de instancia el demandante-apela ante nos alegando que las conclusiones de hechos no se encuentran sostenidas por la prueba y que erró el tribunal al no aplicar el principio de negligencia comparada. Le asiste la razón.
*808 II
En nuestra jurisdicción las acciones en daños y perjuicios derivadas de actos u omisiones culposas o negligentes están gobernados por el artículo 1802 del Código Civil, 31 L.P.R.A. see. 3141. Véase, Toro Aponte v. E.L.A., 97 J.T.S. 18, opinión de 31 de enero de 1997; J.A.D.M. v. Centro Comercial Plaza Carolina, 93 J.T.S. 26, res. 19 de febrero de 1993; Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990); Jiménez v. Peregrina Espinet, 111 D.P.R. 700 (1982); Valle v. Amer. Inter. Life Ins. Co., 108 D.P.R. 692 (1979); Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853 (1976). Este artículo dispone:
"El que por acción u omisión causa claño a otro interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". (Ennegrecido nuestro).
Se requiere en efecto que para que exista responsabilidad civil tienen que concurrir los siguientes factores: (1) que efectivamente se haya sufrido un daño; (2) que haya un nexo o relación causal entre el daño sufrido y la acción u omisión de otra persona y (3) que en el acto u omisión intervenga culpa o negligencia. Véase, Ramírez Salcedo v. E.L.A., 96 J.T.S. 41, opinión del 19 de marzo de 1996; Tormos Arroyo v. Departamento de Instrucción, 96 J.T.S. 34, opinión de 13 de marzo de 1996; Monllor Arzola v. Sociedad de Gananciales, 95 J.T.S. 77, opinión de 13 de junio de 1995; Sociedad de Gananciales v. González Padín, Co., Inc., 117 D.P.R. 94 (1986).
A su vez, al articulado mencionar que "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización" reconoce que en nuestra jurisdicción opera la doctrina de negligencia comparada. Dicha doctrina establece que si bien es cierto que la negligencia del demandante no derrotará su causa de acción, ésta se tomará en cuenta al momento de adjudicar el porciento de negligencia atribuible al demandado y su indemnización se reducirá en dicha proporción. Torres Pérez v. Medina Torres, 113 D.P.R. 72 (1982); Prieto v. Maryland Casualty, 98 D.P.R. 594 (1970).
La culpa o negligencia se define como la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias naturales o racionales de un acto u omisión, que una persona prudente y razonable habría de anticipar en las mismas circunstancias. Toro Aponte v. E.L.A., supra; Ramos v. Carlo, 85 D.P.R. 353, 358 (1962).
A su vez, el profesor Herminio Brau del Toro define al acto negligente como:
"[E]l quebrantamiento del deber impuesto o reconocido por ley de ejercer, como lo haría un hombre prudente y razonable, aquel cuidado, cautela, circunspección, diligencia, vigilancia y precaución que las circunstancias del caso exijan, para no exponer a riesgos previsibles e irrazonables de daños como consecuencia de la conducta del actor, a aquellas personas que, por no estar ubicadas muy remotas de éste, un hombre prudente y razonable hubiese previsto, dentro de las circunstancias del caso, que quedan expuestos al riesgo irrazonable creado por el actor. Por tanto, para que ocurra un acto negligente tiene que existir un deber de cuidado impuesto o reconocido por ley, y el quebrantamiento de este deber. Esto significa que en cada situación de hechos, la ley impone al actor observar un "estándar de cuidado" que será determinado por las circunstancias particulares del caso". Brau del Toro, Herminio M., Los Daños y Perjuicios Extracontractuales en Puerto Rico, Publicaciones J.T.S., 1986, pág. 183.
Del mismo modo, el artículo 1802 establece también el principio de causalidad. Esta doctrina postula que causa es aquella que comúnmente produce el daño. Estremera v. Inmobilaria R.A.C., Inc., 109 D.P.R. 852 (1980); Elba A.B.M. v. U.P.R., supra; Toro Aponte v. E.L.A., supra. Es decir, que si la prueba demuestra que la acción u omisión del demandado, es la causa próxima del daño, aún cuando no sea la única causa del mismo, el demandado responderá en daños por negligente. Velázquez v. Ponce Asphalt, 113 D.P.R. 39 (1982). El concepto de causa próxima es un factor determinante en la adjudicación de responsabilidad. El demandante tiene que demostrar que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. Al así actuar, el demandante está demostrando que la acción u omisión del demandado fue con mayor probabilidad la causa, adecuada o eficiente de los daños sufridos. Para ello es preciso hacer una retrospección del acto negligente para *809 ver si éste constituye la consecuencia razonable y ordinaria del daño. Sociedad de Gananciales v. González Padín, supra.
En el presente caso el foro de instancia determinó que la responsabilidad por los daños sufridos recaía completamente en el demandante porque fue su negligencia la causa próxima de los daños.
De entrada queremos señalar, que los tribunales apelativos no intervienen con la apreciación de la prueba testifical que haya hecho el juzgador de los hechos, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Véase, Orta v. Padilla, 95 J.T.S. 21, pág. 668, op. de 8 de febrero de 1995; Rodríguez Oyola v. Machado Díaz, 94 J.T.S. 82, pág. 12008, op. de 3 de junio de 1994; Cooperativa v. Lugo, 94 J.T.S. 77, pág. 11985, op. de 25 de mayo de 1994. Esto es así, porque el foro de instancia está en mejor posición que los tribunales apelativos para aquilatar la prueba testifical debido a que el juzgador de los hechos pudo observar a los testigos y su comportamiento en la silla testifical. Pueblo v. Chévere Hereida, 95 J.T.S. 115, pág. 35. No obstante, el arbitrio del juzgador de los hechos no es absoluto y una apreciación errónea de la prueba no goza de inmunidad frente a nuestra función revisora. Véase, Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Vélez v. Secretario de Justicia, 115 D.P.R. 533, 545 (1984); Vda. de Morales v. De Jesús Toro, 107 D.P.R. 826, 829 (1978).
III
El Tribunal Supremo de Puerto Rico ha resuelto que las personas que discurren por las vías públicas tienen la obligación de observar la precaución y cuidado que se espera de un hombre prudente y razonable para evitar colisiones y caídas. Véase, Torres v. Municipio de Mayaguez, 111 D.P.R. 158, 163 (1981); González Ivankovitch v. Las Américas Professional Center, 103 D.P.R. 89, 91 (1974). En el caso de marras, es un hecho que no está en controversia, que el demandado realizó un viraje indebido en forma de "U". Este declaró que salía del estacionamiento que se encontraba al lado del carril que conduce de Yabucoa hacia Humacao para doblar a la izquierda en dirección a su casa. A nuestro juicio, un hombre prudente y razonable tenía que preveer que un viraje indebido podía ocasionar un accidente. Es predecible y anticipable que un conductor que tiene que invadir el carril contrario para hacer un viraje puede ocasionar un accidente. En realidad, el accidente se debió a que el demandado no/tomó las debidas precauciones al realizar su viraje y a que el demandante no esperó pacientemente/su turno en la fila e invadió el carril contrario en donde debía discurrir. Véase a manera de ilustración, Brazee v. Wise, 83 D.P.R. 179 (1961).
La prueba desfilada ante el Juez de instancia tiende a demostrar que el accidente se debió a la negligencia concurrente de ambas partes que no observaron las precauciones que un hombre prudente y razonable hubiera tomado. La obligación de resarcir los daños ocasionados surge de la falta del demandado de preveer que su acto podía producir un accidente. Por tanto, erró el tribunal al no aplicar el principio de negligencia comparada. Réstanos adjudicar el porciento de negligencia atribuible al demandado.
Nuestro acervo jurisprudencial reconoce que un "motorista no está obligado a anticipar los actos inesperados de personas que no están en el curso de su ruta y que de súbito se colocan en el mismo." Matos v. Pabón, 63 D.P.R. 890, 900 (1944). No obstante, en el caso de autos el foro de instancia resolvió que el demandante discurría por el carril contrario y que esa fue una de las causas del accidente.
Ahora bien, como mencionáramos anteriormente, el accidente no hubiera ocurrido si el demandado no hubiera hecho un viraje indebido en forma de "U". Este "aceptó que iba a virar en "U", que no vio que viniera vehículo alguno, mucho menos la motora, y ahí ocurre el accidente." Cabe señalar, que el deber de mantener la vigilancia incluye no sólo lo que se tiene al frente o a plena vista; también incluye lo que se ve oblicuamente o en la dirección en que se viaja. Véase a manera de ilustración, Molina Caro v. Dávila, 121 D.P.R. 362, 371-372 (1988). El demandado estaba consciente de los riesgos inherentes a un viraje indebido en plena intersección donde por lo general transitan muchos vehículos en ambas direcciones. Dada las circunstancias particulares del caso estimamos que el demandado es responsable del 50% de los daños recibidos por el demandante.
Por último, en lo referente a la imposición de honorarios de abogados, es menester recordar que *810 éstos se imponen al litigante perdidoso que por su contumacia, insistencia y temeridad obliga a la otra parte a pleitear su causa e incurrir en unos gastos, trabajos y molestias innecesarias. Veáse, Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718 (1987); Soto v. Lugo, 76 D.P.R. 444, 448 (1954).
En el caso de marras, el demandante se vio obligado a instar la presente acción porque el demandado se negó a responder por los daños ocasionados. Concluimos pues, que la parte apelante no actuó con temeridad al acudir a los tribunales a defender su causa.
Por los fundamentos expuestos se revoca la sentencia y se le impone a la apelada el 50% de la responsabilidad por el accidente. Se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Humacao, para que valorice los daños sufridos por el demandante y reduzca a la mitad su indemnización conforme el porciento de negligencia comparada previamente establecido. De otra parte, eliminamos la partida de honorarios de abogados por temeridad impuéstale a la parte demandante.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General