HENRY MASON, demandante y apelado, *v.* WHITE STAR BUS LINE, INC., demandada y apelante.

Núm. 6836.—*Sometido:* Junio 4, 1936. *Resuelto:* Enero 19, 1937.

*Celestino Iriarte, F. Fernández Cuyar* y *Héctor González Blanes,* abogados de la apelante; *J. Henri Brown, G. E. González, G. Benítez Gautier* y *Sergio G. Gelpí,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO, emitió la opinión del tribunal.

El demandante reclamó la suma de $11,929 por concepto de indemnización por los daños y perjuicios sufridos como consecuencia de las lesiones que recibiera al chocar dos de las guaguas pertenecientes a la demandada.

Se alega en la demanda que el demandante abordó la guagua P–16, en Santurce, para trasladarse a San Juan, como pasajero; que en el momento en que caminaba por la Avenida Ponce de León en dirección a San Juan, al llegar a la curva después de pasado el puente ''Guillermo Esteves'', dicha guagua se cruzó con la número P–32, perteneciente también a la demandada, produciéndose un choque entre ambos vehículos, como consecuencia del cual el demandante sufrió una fractura del húmero izquierdo y otras lesiones y contusiones en varias partes del cuerpo; y que dichas lesiones tuvieron como causa única, próxima y directa la negligencia de los empleados de la demandada que conducían y operaban uno y otro vehículo.

Negó la demandada que las dos guaguas tuvieran colisión o choque entre sí, al cruzarse o en cualquier otro momento, y negó además que las lesiones del demandante, si alguna sufrió, fueran causadas por la negligencia de los empleados que conducían las dos guaguas. Y como defensas especiales, alegó:

1. Que la demanda no aduce hechos suficientes para constituir una causa de acción.

2. Que el accidente tuvo como causa única, próxima y directa la negligencia y descuido del demandante, al llevar su codo y antebrazo izquierdo fuera de la ventanilla de la guagua, en contravención del aviso escrito fijado en el interior del vehículo, por el cual se previene a los pasajeros contra el peligro de esa práctica.

3. Que en la noche del accidente, 2 de octubre de 1932, la carretera se hallaba parcialmente obstruída por postes de la luz eléctrica que habían sido derribados por el huracán del 26 de septiembre del mismo año, dejando libre para el tráfico tan sólo una parte de la avenida, pero lo suficiente para que dos vehículos pudieran transitar por ella al mismo tiempo; que en el momento de cruzarse, ambos vehículos marchaban a una velocidad moderada, tomando las precauciones necesarias para evitar accidentes y que se cruzaron una a otra, sin que en ningún momento chocaran entre sí, sin que se rozaran siquiera sus costados y sin que ninguna de las dos sufriera desperfecto alguno.

Celebrada la vista, durante la cual se practicó una inspección ocular del vehículo en que viajaba el demandante, la corte dictó sentencia por la que se condena a la demandada a pagar al demandante la suma de $2,429 como indemnización, más las costas y honorarios de abogado. La demandada interpuso el presente recurso.

Los errores señalados por la parte apelante son:

"*Primero.*—Erró la corte inferior al declarar que los vehículos de la demandada chocaron o rozaron entre sí.

"*Segundo.*—La corte sentenciadora cometió error manifiesto al sostener que el demandante llevaba su codo y antebrazo dentro del vehículo; al sostener que la teoría del demandante está sostenida por la prueba y se ajusta más a la lógica que la de la demandada; y al no declarar que la conducta del demandante fué negligente, quedando, por tanto, impedido de recobrar indemnización alguna de la demandada.

"*Tercero.*—Erró la corte *a quo* al establecer que la causa determinante de los daños sufridos por el demandante fué el supuesto choque o colisión entre los vehículos.

"*Cuarto.*—Erró la corte sentenciadora, y abusó de su discreción, al condenar a la demandada a pagar al demandante las costas y honorarios de abogado del litigio."

■■ Podemos considerar los alegados errores conjuntamente, toda vez que ellos se refieren a la apreciación de la prueba por la corte sentenciadora. Examinemos la prueba.

Rafael Ríos, Jr., declaró: que él subió a la guagua en el mismo sitio en que la tomaron el demandante Mason y el Sr. Urquhart, sentándose Mason en el lado izquierdo del tercer asiento, de los de la izquierda de la guagua, Urquhart en el mismo asiento, al lado de Mason y el testigo Ríos en el extremo izquierdo del segundo asiento de los de la derecha, de espalda al frente de la guagua y en conversación con los otros dos; que al llegar a la curva sintió "a scraping noise and a cracking noise, like that of sticks" (un ruido de fricción y un ruido como el crujir de la madera); que entonces el Sr. Mason se quejó de haberse fracturado el brazo; que sabe que las dos guaguas chocaron porque oyó "the distinct scraping of the two buses and a cracking noise like breaking sticks, something splintered" (la fricción clara de las dos guaguas y un ruido como el crujido de madera que se rompía, de algo que se hacía astillas); que en la guagua no había más que ellos tres y el *chauffeur;* que no notó en qué parte de la ventanilla llevaba Mr. Mason su brazo o codo izquierdo.

Robert Charles Duff Urquhart corroboró en todas sus partes la declaración de Rafael Ríos, Jr., haciendo constar que sabe que las guaguas se rozaron una con otra porque oyó un ruido que puede describirlo solamente como el de una fricción o raspado (*scrape*), que tenía algo que ver con el maderamen de la guagua; y que oyó ese ruido muy distintamente; que a pesar de los obstáculos que había en la parte de la carretera donde ocurrió el accidente, había espacio suficiente para que dos guaguas pudieran cruzarse, dejando un *fair space,* un espacio como de dos pies entre una y otra.

Henry Mason, el demandante, declaró que después de haber pasado el puente, el *chauffeur* de su guagua tocó el *klaxon* y al mirar vió que venía otra guagua, pero que como

había espacio siguió hablando y que en seguida vió con la orilla de sus ojos que esa misma guagua en vez de seguir como venía viró y le tocó en el codo; que en ese momento él estaba sentado con el brazo sobre el marco de la ventanilla; que entre el asiento y el costado de la guagua hay un espacio para poner el codo; que en el sitio donde estaba él sentado había tres barras de hierro que estaban a tres pulgadas la primera del borde de la caja donde él tenía el brazo y a 2½ pulgadas las otras dos; que el centro de la otra guagua le tocó y que "hubo un choque, no exactamente un choque, pero un ruído fuerte, un *scrape* (rozadura)" y en seguida sintió que su brazo fué roto. (En repregunta) Que durante el trayecto iba de frente hacia el frente de la guagua, con el codo izquierdo recostado contra las barras que hay en la ventanilla; que es posible que alguna parte de su brazo saliera fuera de las barras; que las tres barras ocupaban como nueve pulgadas desde la base de la ventanilla; que no es cierto que él llevara su brazo sobre las tres barras protectoras; que no sabe qué parte de la guagua le tocó, pero que tiene la impresión de que fué el centro; que las barras estaban hacia el lado de afuera y que él tenía el codo recostado en el borde de la ventanilla, contra las barras.

La prueba testifical de la demandada tendió a probar que las dos guaguas envueltas en el accidente sufrido por el demandante habían sido examinadas momentos después del suceso y no presentaban desperfecto alguno, sacando como consecuencia que no había habido choque o contacto alguno entre los dos vehículos.

Antonio Velázquez, el *chauffeur* de la guagua en que viajaba el demandante, declaró que Mason venía sentado en el tercer asiento, a mano izquierda, el brazo derecho sobre el respaldo del asiento y el otro sobre el protector que tiene la guagua; que vió a Mason en esa posición en la parada 44, en la parada 20 y varias veces más; que se fijaba por el espejo y lo veía en esa posición; que Mason llevaba el

brazo izquierdo encima del último protector de la ventanilla. Y a repreguntas del demandante contestó que no podía decir la posición en que estaba Mason cuando ocurrió el accidente.

Como resultado de la inspección ocular de la guagua núm. P–16, la corte llegó a las siguientes conclusiones de hecho:

" . . . La Corte aprecia que la guagua tiene cinco asientos, y uno en el fondo, con un pasillo en el medio que separa los asientos. La guagua es de marca General Motors Corp. La Corte aprecia que la distancia que hay en la parte interior, del borde interior a las barras es de dos pulgadas y media, y la distancia entre las barras es de dos pulgadas y media, y tomando la distancia desde la parte exterior a la primer barra es de tres pulgadas, y desde el vano de ventana hasta la última barra es de nueve pulgadas. Del asiento al borde interior de la ventanilla hay diez pulgadas y media, estando sentado un pasajero. De la parte posterior del asiento al borde interior de la ventana son trece y media pulgadas, y tres cuartos de pulgada la pestaña que está a la parte interior de la ventana, y esta pestaña sobresale del borde de la ventanilla media pulgada. Tres y media pulgadas el ancho de la ventanilla incluyendo la pestaña."

Y en su apreciación de esos hechos, en relación con las declaraciones de los testigos de ambas partes, la corte, en su opinión, llega a la siguiente conclusión:

" . . . En cuanto a la forma en que venía sentado Mason y que relata el mismo conductor, también hay que desecharla por absurda. Ensaye quienquiera a poner el codo o el brazo encima de las varillas de hierro que cruzan las ventanillas de las guaguas y se verá que por incómoda es insostenible esta posición. *Item* más, en la inspección ocular el demandante voluntariamente y a petición del abogado de la demandada se sentó en la posición en que estaba cuando el accidente, y así sentado nosotros apreciamos lo que consignamos en el acta de la inspección ocular y que dice así:

" 'La corte aprecia que sentados dos pasajeros en el tercer asiento del lado izquierdo de la guagua están juntos los pasajeros, sin distancia entre ellos. El Sr. Mason se sienta y asume la misma posición que manifestó en su declaración tenía cuando el accidente, y la corte aprecia que su brazo izquierdo descansa sobre la pestaña situada en el vano de la ventana y que no sobresale parte alguna de su brazo

y codo fuera del interior de la guagua.' Insistió de nuevo el abogado de la demandada en que se sentase de lado y apoyando su brazo sobre la última barra o protector del lado izquierdo de la guagua y al colocarse así el demandado la corte expuso:

"La corte aprecia que el testigo Sr. Mason asume la posición que pide la parte y su brazo izquierdo lo coloca por encima del protector, y forma entonces un ángulo de 90 grados. La punta del codo en el exterior del vehículo.' Pero ya hemos dicho que tal posición no puede sostenerse por absurda e incómoda.''

Es indudable que existe un conflicto entre la prueba de una y otra parte, y entre las teorías desarrolladas por el demandante y por la demandada para explicar el accidente. Es a la corte sentenciadora a la que corresponde el deber y la responsabilidad de resolver esos conflictos, por tener ella mejores oportunidades para hacerlo, después de ver y oír declarar a los testigos y de hacer una inspección ocular del sitio en que ocurrió el accidente. Y en este caso, después de oír la prueba testifical y de inspeccionar el sitio del suceso, la corte sentenciadora ha llegado a la conclusión de que la teoría del demandante está sostenida por la prueba y se ajusta más a la lógica. Del récord no aparece prueba alguna, y así lo declara la corte inferior, de que en el momento de recibir el golpe que le causó la lesión el demandante llevase el brazo por encima de la última varilla protectora instalada en la ventanilla. El resultado de la inspección ocular llevó a la corte a la conclusión de que la posición que dice la demandada ocupaba el demandante al recibir la lesión es incómoda, absurda e insostenible.

No habiéndose imputado a la corte inferior haber actuado por pasión o prejuicio y no apareciendo, a nuestro juicio, que se haya cometido un error manifiesto en la apreciación de la prueba, se confirma la sentencia recurrida.

Los Jueces Asociados Señores Wolf y Córdova Dávila no intervinieron.