RODOLFO ROSADO Y CLARA SANTIAGO DE ROSADO, EN REPRESENTACIÓN DE SU HIJO MENOR DE EDAD ANGEL LUIS ROSADO SANTIAGO, demandantes y apelados, *v.* FAUSTINO ROSARIO ALEJANDRINO Y THE HARTFORD ACCIDENT AND INDEMNITY COMPANY, demandados y apelantes.

Núm. 9500.—*Sometido:* Noviembre 12, 1947. *Resuelto:* Julio 19, 1948.

*James R. Beverley, José López Baralt* y *R. Rodríguez Lebrón,* abogados de los apelantes; *Eduardo Cuchí Coll,* abogado de los apelados.

Opinión emitida por el Juez Asociado Sr. De Jesús, en la cual concurre el Juez Asociado Sr. Snyder.

El menor Angel Luis Rosado, a quien en lo sucesivo llamaremos "el apelado", representado por sus padres, obtuvo una sentencia por daños y perjuicios por la cantidad de $2,000 contra los apelantes Faustino Rosario Alejandrino, como causante del daño y The Hartford Accident and Indemnity Company, como aseguradora.

La prueba fué contradictoria. La del. apelado puede resumirse así: En la fecha del accidente, 19 de septiembre de 1945, el apelado contaba doce años de edad. Ese día fué a tomar un baño de mar en la playa del Condado, acompañado de su hermano Rodolfo, un año mayor que él. Salie-

ron del mar como a las cuatro de la tarde. Rodolfo cruzó
la Avenida Nereidas de norte a sur, precisamente frente al
antiguo edificio de los Caballeros de Colón, entonces ocu-
pado por un club de United Services Organization. Se de-
tuvo a la orilla sur de la Avenida en espera del apelado,
quien permaneció al otro lado pendiente de cruzar para
unirse a él. En aquellos momentos el carro eléctrico, que
marchaba por aquel trayecto con dirección a San Juan, se
detuvo frente al referido edificio para dejar y recibir pa-
sajeros. En la misma dirección iba un automóvil. Hacia
Santurce iba el automóvil del apelante Faustino Rosario, a
quien en lo sucesivo llamaremos "el apelante". Una vez
que el automóvil que se dirigía a San Juan pasó frente al
apelado, su hermano le avisó para que cruzara la Avenida.
El apelado miró hacia la derecha e izquierda y no viendo nin-
gún automóvil, salió corriendo rápidamente hacia donde se
hallaba su hermano. Poco antes de ganar la orilla sur fué
alcanzado por el automóvil del apelante, el cual, guiado por
éste, marchaba por aquel sitio a una velocidad de cincuenta
millas por hora, según declaró el testigo Diego Cuevas Her-
nández, motorista del carro eléctrico antes mencionado. Con
motivo del choque del automóvil con el apelado, éste fué
lanzado desde la Avenida hasta caer entre los raíles del
tranvía. Afortunadamente el tranvía iniciaba su marcha y
pudo ser detenido sin causarle daños ulteriores.

Refiriéndose a la lesión recibida, declaró el Dr. Llobet
que el niño tenía una incapacidad total del brazo, y que ha-
bía aconsejado su amputación porque cubriéndole el muñón
con el pedazo de piel que le quedaba, curaría rápidamente.

La versión del apelante fué, en síntesis, como sigue: Iba
guiando su automóvil con dirección a Santurce por la Ave-
nida Nereidas ocupando, en parte, la vía del carro eléctrico,
el cual marchaba con dirección a San Juan. Otro automó-
vil marchaba por la Avenida en la misma dirección que el
tranvía. Al acercarse el apelante al automóvil que iba ha-

cia San Juan, abandonó la vía para dar paso al carro eléctrico. En el momento en que el apelante fué a pasar junto al otro automóvil, salió por detrás de éste un niñito corriendo rápidamente hacia la vía del carro eléctrico. El apelante declaró que vió al niño por primera vez a una distancia de treinta pies; más adelante rectificó declarando que esa distancia era de veinticinco pies; que su automóvil marchaba a veinticinco o treinta millas por hora, pero luego, en el contrainterrogatorio, manifestó que su velocidad era de veinticinco a treinta kilómetros, es decir, de quince y cinco octavos millas a dieciocho y tres cuartos millas, y que sus frenos estaban en perfectas condiciones.

■■ La cuestión primordial en este recurso es determinar cuál fué la causa próxima del accidente. Si en la hipótesis de que el apelante hubiera marchado a una velocidad razonable, el accidente no hubiera podido evitarse porque cuando el apelado se dispuso a cruzar la Avenida ya el automóvil se hallaba tan cerca de él que no era posible pararlo antes de arrollarlo, tendríamos que resolver que la causa próxima del accidente no fué la alegada velocidad exagerada, sino la imprevisión del apelado al tratar de cruzar dentro de las circunstancias en que lo hizo.

Para determinar si el apelante pudo evitar el accidente tenemos en los autos el dato esencial, es decir, la distancia a que se hallaba el automóvil del sitio del accidente cuando el apelado empezó a cruzar la avenida. Parece claro que éste debe ser el factor decisivo cuando, como en el presente caso, se trata de una recta y no existe obstáculo alguno que obstruya la visión. Pero en otros casos, cuando hay una curva, por ejemplo, no debe tomarse como punto de partida la distancia a que se hallaba el automóvil cuando el demandante empezó a cruzar, sino la distancia a que el demandante pudo ser visto por el demandado. Sobre este punto declaró el apelante que él vió cuando el apelado empezó a cruzar y que entonces su automóvil se hallaba a una distancia de

treinta pies, pero prontamente rectificó reduciendo esa distancia a 25 pies.

El apelado no presentó evidencia alguna tendiente a demostrar a qué distancia del lugar del accidente se hallaba el automóvil cuando él abandonó el sitio de seguridad en que se encontraba para disponerse a cruzar la avenida. En tales circunstancias aceptaremos la declaración del apelante sobre este punto en su parte más beneficiosa para el apelado, es decir, que el automóvil se hallaba a treinta pies de distancia cuando él trató de cruzar la avenida. Establecido este hecho, fácil es determinar la velocidad a que debía marchar el automóvil para poder parar dentro de esa distancia estando sus frenos en perfectas condiciones, como declaró el apelante.

Existen tablas científicamente preparadas aceptadas por tribunales, tratadistas y organismos oficiales, mediante las cuales puede determinarse la distancia que recorre un automóvil desde que el conductor recibe la impresión de peligro hasta que para en firme aplicando los frenos, los cuales, desde luego, deberán estar en buenas condiciones de funcionamiento.[1]

De la tabla que aparece en la conocida obra Blashfield's *Cyclopedia of Automobile Law and Practice, Permanent Edition,* T. 9, pág. 706,[2] resultan los siguientes datos: que el conductor promedio de automóviles tarda ¾ de segundo en reaccionar ante un peligro; que un automóvil que marcha a 10 millas por hora recorre 14.5 pies por segundo; que en los ¾ de segundo que tarda el conductor en reaccionar,

[1] Al estudiar este caso encontramos que ninguna de las partes invocaba las tablas en cuestión. A fin de no dictar una sentencia sin que especialmente la parte perjudicada por la misma hubiera tenido una oportunidad de expresarse sobre ese punto, requerimos a las partes para que presentaran por escrito sus puntos de vista sobre la materia. Así lo hicieron presentando sendos alegatos.

[2] Esta tabla ha sido aplicada, entre otros, en los siguientes casos: *Magnolia Petroleum Co.* v. *Saunders,* 104 S.W.2d 1062; *Missouri Pac. R. Co.* v. *Hancock,* 113 S.W.2d 489 y *Capital Transit Co.* v. *Grimes,* 164 F.2d 718, opinión disidente del Juez Edgerton.

recorre 11 pies y que desde que los frenos son aplicados—suponiendo que estén en perfectas condiciones—el automóvil recorre 4.5 pies, o sea una distancia de 15.5 pies desde que el conductor percibe el peligro hasta que puede parar el vehículo.([3])

Supongamos que el automóvil del apelante iba a una velocidad de 30 kilómetros por hora como él declaró, igual a 18.64 millas. Aplicando la referida tabla tendríamos que durante los ¾ de segundo que el apelante necesitó para reaccionar, su automóvil recorrió una distancia de 20.55 pies, y desde que aplicó los frenos hasta que paró recorrió 16.15 pies, o sea, un total de 36.68 pies.

Si aun marchando el apelante a una velocidad de 18.64 millas—la cual estimamos razonable—([4]) el accidente hubiera sido inevitable porque hubiera tenido que recorrer 36.68 pies y la distancia que lo separaba del apelado era solamente de 30 pies, es evidente que en el supuesto de que hubiera marchado a 50 millas por hora, como declaró probado la corte a quo, esa velocidad no pudo ser la causa próxima del accidente.

El apelado invoca la tabla que usa ''New York Bureau of Motor Vehicles'' y que aparece en 19–20 Huddy *Cyclopedia of Automobile Law, 1948, 16th Cumulative Supplement,* págs. 6 y 7, la cual dice que puede estimarse en ½ segundo aproximadamente, el tiempo necesario para reaccionar ante el peligro. Las otras tablas que conocemos([5]) fijan ese

([3])Desde luego que estas tablas están computadas tomando por base al conductor promedio. Debemos aceptarlas como aproximadas.

([4])Decimos que es razonable teniendo en cuenta que el trayecto desde la terminación del puente Dos Hermanos hasta el sitio donde ocurrió el accidente es una recta; que el único edificio que se encuentra al lado derecho es el del club United Services Organization, frente al cual tuvo lugar el accidente; y que la única edificación al lado izquierdo es una casa junto a la terminación del puente. En tales circunstancias, el conductor de automóvil no debe esperar que niños u otras personas crucen la avenida en aquel sitio.

([5])1, *Sportsmanlike Driving Series, The Driver-American Automobile Association,* pág. 30.

2. *War Department Technical Manual* TM 21–305, *Driver's Manual* (Nov. 1944) pág. 26.

tiempo en ¾ de segundo. A pesar de escoger el apelado la que más favorece su contención, aun así, para poder parar en firme un automóvil que marche a 18.64 millas (igual a 30 Kms.) por hora, necesitaría cubrir, de acuerdo con dicha tabla, una distancia de 32 pies según el cálculo del apelado y ya hemos visto que la distancia que separaba al apelante del apelado cuando éste empezó a cruzar la avenida, era de 30 pies. Se trata pues, a nuestro juicio, de un caso desgraciado del cual no es responsable el apelante, sino el acto irreflexivo del apelado al tratar de cruzar la avenida estando tan próximo el automóvil. *De García* v. *Figueroa & Gautier*, 52 D.P.R. 897, confirmado en *De García et al.* v. *Figueroa & Gautier, et al.*, 102 F.2d 148, y *Sucesión Ortiz* v. *Ramírez*, 68 D.P.R. 498.

*Procede revocar la sentencia apelada, y estando este Tribunal en condiciones de dictar la que debió haber dictado la corte de distrito, procede hacerlo ahora declarando sin lugar la demanda con costas a los demandantes.*

El Juez Asociado Sr. Marrero no intervino.

Opinión emitida por el Juez Asociado Sr. Todd, Jr., en la cual concurre el Juez Presidente Sr. Travieso.

██ Es doctrina reiteradamente ratificada por esta Corte Suprema que no revocaremos una sentencia cuando el único error imputado a la corte inferior es el de no haber apreciado bien la prueba, a menos que se demuestre que cometió manifiesto error en su apreciación o que actuó movida por pasión, prejuicio o parcialidad y que, para que el manifiesto error exista, los hechos incontrovertidos deben revelar que no hay *base posible* para sostener la sentencia. *Matos* v. *Pabón*, 63 D.P.R. 890; *Sucn. Ortiz* v. *Ramírez*, 68 D.P.R. 498.

██ Dos son los errores señalados en este recurso por los apelantes: 1ro., error al apreciar la prueba y 2do., error al no admitirse cierta prueba de los demandados para impugnar la veracidad de un testigo de los demandantes.

Como el segundo señalamiento carece de méritos, ya que, según aparece del récord, los apelantes no sentaron las bases para impugnar a dicho testigo, de acuerdo con lo que requiere el artículo 159 de la Ley de Evidencia, Código de Enjuiciamiento Civil, artículo 521, el recurso queda limitado al primer señalamiento.

Después de hacer una síntesis de las declaraciones de los testigos del caso, la corte inferior, en su opinión, hizo constar lo siguiente:

"Analizada la prueba en su totalidad, llegamos a la conclusión de que el accidente surgió con motivo de la velocidad exagerada a que marchaba el vehículo del demandado Faustino Rosario Alejandrino por un sitio residencial en que la carretera es recta y amplia, en momentos en que venían vehículos en dirección contraria, por el lado izquierdo de dicho demandado, en momentos en que marchaban otros vehículos en la misma dirección que él llevaba y en momentos en que corría el 'trolley' por la izquierda de la carretera y por la derecha del vehículo de Rosario Alejandrino. Éste en el momento del accidente conducía su vehículo a través de dos líneas de vehículos, es decir, por entre los que venían en dirección contraria a él y el 'trolley'. Bajo tales circunstancias, lo prudente, lo sabio y lo aconsejable hubiera sido detenerse hasta que el tranvía pasara. Lejos de hacer esto él, que hasta el momento del accidente había marchado por sobre la parte de la carretera ocupada por la vía, se echó hacia la izquierda, dejó paso franco al tranvía y siguió caminando a toda prisa sin tocar bocina o sin dar aviso de clase alguna. Su velocidad, según su propia declaración, era de 25 a 30 kilómetros por hora; según Cuevas Hernández de 50 millas por hora y según Angelina Hernández 'ligera'. Todos están contestes en que después del accidente el demandado Rosario Alejandrino detuvo su vehículo hacia el centro del tranvía; un testigo nos dice que como a 35 pies de distancia, otro que como a 12 ó 15 metros y el propio demandado que se detuvo en seguida. Otro testigo recuerda que el accidente ocurrió mucho antes de donde estaba el 'trolley', lo que también demuestra que marchaba a bastante velocidad. De lo contrario hubiera podido detenerse inmediatamente.

"Es cierto que este niño de doce años de edad actuó con la insensatez que de ordinario lo hacen niños menores. Si venían ciertos vehículos en dirección a San Juan, si marchaban automóviles

hacia Santurce y si en adición a todo ello el 'trolley' ocupaba parte del lado izquierdo de la carretera, lo lógico hubiera sido no cruzar la avenida en ese momento. Véase: *Franco* v. *Sierra*, 58 D.P.R. 215. No embargante, no es posible esperar de un niño de tierna edad la madurez y el juicio de los mayores.

"* &ast; &ast; &ast; &ast; &ast; &ast;

"A nuestro juicio, no es éste el caso de un niño de tierna edad que deliberadamente se sitúa frente a un vehículo en movimiento. *Aguayo* v. *Municipio*, 35 D.P.R. 425, 427 y 65 A.L.R. 203. Este es el caso de un niño que si bien trata de cruzar una avenida en momentos en que vehículos discurren por ella en ambas direcciones, el automóvil que produjo el accidente y arrolló al niño corría a velocidad no autorizada por ley, sin tomar las debidas precauciones y sin dar aviso de su proximidad.

"Decimos que el vehículo del demandado Rosario Alejandrino marchaba a velocidad no autorizada por ley porque él mismo admite que corría como a 25 ó 30 kilómetros por hora; y otros dicen que él corría a velocidad mucho mayor. Según la Ley núm. 55 de 27 de abril de 1942, pág. 527, 'Para reglamentar el uso de vehículos de motor en Puerto Rico':

"'La velocidad de un vehículo de motor deberá en todo tiempo regularse con el debido cuidado, tomando en cuenta el ancho, tránsito, uso y condiciones del camino, y el hecho de conducir . . . dentro de la zona urbana de un municipio a una velocidad mayor de veinticuatro (24) kilómetros por hora, constituirá evidencia prima facie de que el vehículo era conducido sin el debido cuidado'. Art. 11, pág. 561.

"Es cierto que ese precepto estatutario fué modificado por el artículo 15 de la Ley núm. 279 de 5 de abril de 1946, pág. 599, mas esa ley no regía a la fecha en que ocurrió el accidente en este caso y el demandado no puede acogerse a sus disposiciones. La prueba demuestra prima facie por lo menos que el vehículo era conducido negligentemente y él no ha logrado, en nuestra opinión, destruir esa presunción."

Frente a estas conclusiones de hecho y de derecho de la corte sentenciadora, se pretende colocar ahora en apelación y se aplican por primera vez en esta jurisdicción, unas tablas publicadas en la obra de Blashfield, y en otras, a virtud de las cuales se determina, por experimentos realizados,

la distancia, matemáticamente calculada, a que debe detenerse un vehículo, de acuerdo con la velocidad a que corre, al serle aplicados los frenos. Dándole todo el valor que puedan tener dichas tablas y sin aceptar que debamos adoptarlas como un medio a ser aplicado en casos de esta naturaleza,(1) (el precedente que se establecería aplicándolas en el de autos no hay duda alguna de que sería utilizado en casos futuros) considero que los hechos que la corte inferior consideró probados y la conclusión a que llegó no justifican que revoquemos su sentencia aplicando dichas tablas a base de la declaración del demandado Faustino Rosario. ![6] La corte inferior estuvo justificada en no dar crédito a su declaración pues la misma fué completamente contradictoria. Unas veces decía que vió al niño por primera vez a una distancia de treinta pies para luego rectificar y decir que lo vió a veinticinco pies; que su automóvil marchaba de veinticinco a treinta *millas* por hora, para luego, en el contrainterrogatorio decir que su velocidad era de veinticinco a treinta *kilómetros* por hora. De otra parte de su declaración vale la pena citar lo siguiente: ''P. ¿Entonces usted quiere decir que le dió al niño por la parte frontal de su cuerpo? R. *El me dió, mi carro ya estaba parado.*'' De manera que, según esta versión del demandado, no fué él quien le dió con el automóvil en movimiento al niño sino que ya él había *parado* y fué el niño quien chocó con el automóvil.

Con todas estas contradicciones, ¿cómo es posible aceptar la certeza de ninguna de las apreciaciones del demandado en cuanto a distancias en que vió al niño, velocidad a que corría, condiciones de los frenos de su vehículo, etc., para tener una base cierta para poder aplicar las tablas antes mencionadas?

---

(1)En los tres casos citados en el escolio (2) de la opinión del Juez Asociado Sr. De Jesús, en que se mencionan las tablas, hubo votos disidentes y en dos de ellos, opiniones disidentes por no haberse respetado las conclusiones de hechos considerados probados por el jurado.

Además, la corte inferior no le dió crédito a la declaración del demandado. Tampoco tuvo ella ante su consideración, pues no le fué planteada por la parte demandada, la cuestión de si, de acuerdo con las tablas antes mencionadas, el demandado Faustino Rosario Alejandrino pudo o no detener su vehículo antes de arrollar al niño. De haberse sometido esa cuestión, la parte demandante posiblemente hubiera tenido la oportunidad de demostrar que los frenos del automóvil del demandado no estaban en buenas condiciones y de refutar, con otra prueba pertinente, la aplicabilidad de las tablas a los hechos concurrentes. Es ésta una cuestión que, a mi juicio, debe ser planteada y resuelta, en primera instancia, ante las cortes inferiores y no por esta Corte, a su propia sugestión, en grado apelativo.

La sentencia apelada debe ser confirmada.