ROSARIO PORTALATÍN, demandante y apelada, *v.* ARMANDO MENA BUXEDA e INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, demandados y apelantes.

Número 11260.

*Sometido:* 12 de noviembre de 1954. *Resuelto:* 30 de noviembre de 1954.

*Juan Enrique Géigel, Guillermo Silva* y *Hernán G. Pesquera,* abogados de los apelantes; *Ramón Ferrer Delgado, Gilberto R. Padró Díaz* y *Sigfredo Vélez González,* abogados de la apelada. •

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Ramón Portalatín, un joven de 17 años de edad, falleció el día 31 de diciembre de 1950 a consecuencia de las lesiones que recibiera el día anterior al ser arrollado por un vehículo de motor en la carretera insular núm. 2, entre Hatillo y Arecibo. Su madre legítima demandó ante el anterior Tribunal de Distrito de Puerto Rico, Sección de Arecibo, a Armando Mena Buxeda, dueño y conductor del vehículo causante de las lesiones sufridas por su hijo y a la Indemnity Insurance Co. of North America, aseguradora de dicho vehículo, reclamándoles daños y perjuicios. En la demanda alegó que el accidente en que había perdido la vida su hijo, ocurrió debido a la negligencia del demandado Mena Buxeda.

Contestaron los demandados negando los hechos esenciales de la demanda y como defensas alternativas alegaron, (1) que el indicado accidente ocurrió debido a la negligencia del menor fenecido; (2) que dicho accidente se debió a la negligencia contribuyente del referido menor, y (3) que dicho accidente fué uno desgraciado y fortuito, en el que no medió culpa o negligencia por parte del demandado Mena Buxeda.

Después de celebrarse un juicio en los méritos, la corte a quo dictó sentencia en contra de los demandados y les condenó a pagar a la demandante, en concepto de daños y perjuicios, la suma de $8,000, más las costas y $400 para honorarios de abogado, limitando la responsabilidad de la compañía aseguradora a $5,000 más las costas y honorarios de abogado, que era el límite máximo del contrato de seguro.

La verdadera contienda entre las partes giró alrededor de cómo ocurrió el accidente que dió origen al litigio. La prueba

a este respecto fué contradictoria. Las teorías de una y otra partes eran irreconciliables. Al dirimir el conflicto de esa prueba a favor de la demandante, el tribunal a quo, formuló las siguientes conclusiones de hecho:

"3. Alrededor de las cinco y media de la tarde del día 30 de diciembre de 1950 el menor Ramón Portalatín viajaba en bicicleta por el kilómetro 79 de la Carretera Insular Núm. 2 en el Barrio Hato Abajo, de Arecibo, por su derecha, en dirección de oeste a este, o sea de Hatillo hacia Arecibo, cuando de pronto, y en la misma dirección, apareció la camioneta Studebaker, licencia C-68-326 propiedad de y conducida por el codemandado Armando Mena Buxeda a velocidad exagerada y sin tocar bocina ni dar aviso de ninguna naturaleza embistió con su parte delantera al menor Ramón Portalatín, lanzándolo sobre el encintado, como a metro y medio de la orilla derecha de la carretera y causándole golpes como consecuencia de los cuales falleció al día siguiente en un hospital de Arecibo.

"4. La carretera en el lugar específico donde ocurrió el accidente es ancha, estaba despejada y no transitaban vehículos en dirección contraria a la que llevaban Portalatín y Mena Buxeda al tiempo de ocurrir el accidente. El codemandado Mena Buxeda, a pesar de haberse percatado oportunamente de la presencia del ciclista Ramón Portalatín, no frenó antes del impacto con la bicicleta del menor sino que lo hizo inmediatamente después del golpe.

"5. El accidente ocurrido se debió única y exclusivamente a la culpa, negligencia, temeridad, imprudencia y falta de cuidado y circunspección del codemandado Armando Mena Buxeda al conducir su camioneta en la forma antes descrita. Esta conducta del codemandado Mena Buxeda fué la causa próxima y única del accidente."

En apelación los demandados imputan a la corte sentenciadora haber cometido error manifiesto al apreciar la prueba y al concluir que el codemandado Armando Mena Buxeda fué culpable de negligencia.

A nuestro juicio no se cometió el error señalado. El juez sentenciador dió crédito a Jaime Rivera Urdaz, testigo de la demandante, quien declaró que el accidente ocurrió en la forma consignada en las conclusiones de hecho antes trans-

critas. Para contradecir su testimonio, los demandados presentaron (1) varias fotografías del vehículo de motor del codemandado Mena Buxeda tomadas unos tres días después del accidente. En estas fotografías se ve una abolladura en el guardalodo derecho trasero del referido vehículo; las gomas se ven en buenas condiciones, esto es, con sus estrías o "botones" y además el vehículo no presenta golpes en su parte delantera; (2) certificaciones expedidas por el Departamento del Interior acreditativas de que (a) para el año del accidente no aparecía inscrito en dicho Departamento a nombre de Mena Buxeda ningún otro vehículo de motor a excepción de la guagua Studebaker, licencia C-68-326 y que para la fecha de su inscripción en 19 de octubre de 1950, el vehículo era completamente nuevo, y (b) desde abril de 1950 aparece inscrito un vehículo marca "Willies" a nombre de Juan Antonio Amador, y (3) los testimonios orales del codemandado Mena Buxeda y el de su suegro Juan Antonio Amador y la declaración escrita prestada por Arturo Gigante, Jr., en el proceso criminal seguido contra Mena Buxeda.

La teoría sustentada por esta prueba de los demandados es, en síntesis, al efecto de que el día del accidente, entre 5:00 y 6:00 de la tarde, Mena Buxeda conducía su vehículo de Hatillo hacia Arecibo acompañado de su suegro; que mientras corría a una velocidad de 35 a 40 millas por hora, según el testimonio del codemandado Mena Buxeda, o de 40 a 45 millas por hora según el testimonio escrito de Gigante, Jr., el referido codemandado vió al menor Portalatín en la bicicleta como a medio kilómetro antes de pasarle y se desvió hacia el centro de la carretera para dejarle paso; que después de haber pasado la parte delantera del vehículo por el lado del ciclista se sintió un golpe por el lado derecho trasero del vehículo e inmediatamente Mena Buxeda detuvo su marcha y se bajó del mismo encontrando al ciclista tendido en la carretera como a 40 pies de su guagua; que el vehículo presentaba inmediatamente después del accidente la abolladura que indican las fotografías; que Mena Buxeda había adquirido ese

vehículo completamente nuevo en octubre de 1950 y sus gomas estaban para la fecha del accidente en buenas condiciones, como nuevas; que en la indicada fecha no había llovido y la carretera estaba seca.

Arguyen los apelantes que la corte a quo no debió darle crédito al testigo de la demandante Jaime Rivera Urdaz y señalan varios razones para ello. Alegan que la afirmación de dicho testigo en el sentido de que el vehículo de Mena Buxeda arrolló al menor con su parte delantera así como que las gomas del mismo estaban lisas quedó refutada por las fotografías presentadas en evidencia. Están equivocados los apelantes. Las indicadas fotografías fueron tomadas varios días después de ocurrir el accidente y su valor probatorio dependía de que el juez sentenciador le diera o no crédito a la prueba testifical de los demandados respecto a que al ocurrir el accidente el vehículo se encontraba en las mismas condiciones que indican las fotografías. Una vez que dichos testigos no fueron creídos el juzgador no venía obligado a aceptar, como hechos incontrovertibles o probados, lo que evidenciaban las fotografías.

Arguyen asimismo los apelantes que la prueba de la demandante sobre la velocidad a que corría el vehículo del codemandado quedó refutada tanto por la declaración de Arturo Gigante, Jr., como por la tabla que aparece en la obra de Blashfield, *Cyclopedia of Automobile Law and Practice*, Tomo 9, Parte II, sec. 6237, pág. 703, utilizada por este Tribunal en *Rosado* v. *Rosario*, 69 D.P.R. 169 [1] y conforme a la cual, según los apelantes, un vehículo que marcha a 60 millas por hora recorre una distancia de 226 pies desde el momento en que el conductor se percata de la situación de peligro hasta el momento en que puede detener el vehículo completamente.

Sin embargo, si descartáramos la prueba de la demandante respecto a la velocidad del vehículo, la de los demandados tendería a probar que dicha velocidad era de 40 a 45

---

[1] La opinión emitida por el Juez, señor de Jesús, en el citado caso donde se aplica la tabla de Blashfield, no es una opinión de mayoría.

millas por hora. Bajo ciertas circunstancias tal velocidad puede considerarse exagerada, según concluyó la corte a quo. Los hechos que estimó probados dicha corte sostienen su conclusión al efecto de que la velocidad del vehículo de Mena Buxeda no fué regulada en el momento del accidente con el debido cuidado, tomando en cuenta, el ancho, tránsito y uso y condiciones del camino, según lo dispone en su art. 15 (a) la "Ley de Automóviles y Tránsito". (2)

■■ Los apelantes sostienen también que la corte a quo no pudo concluir correctamente que Mena Buxeda incurriera en negligencia por no haber mantenido su vehículo más retirado de la orilla de la carretera así como tampoco por no haber dado aviso de su proximidad, ni haber frenado antes de que ocurriera el accidente. Arguyen que el "hecho de que la parte delantera de la 'pick-up' pasase por el lado del ciclista sin causar a éste el más leve daño demuestra claramente que el conductor mantuvo el vehículo a distancia prudente y razonable de la orilla derecha de la carretera, así como que el ciclista no estaba en posición alguna de peligro o indicara su intención de desviarse súbitamente, que hubiera sido la razón por la cual el demandado Mena Buxeda hubiera tenido que adoptar mayores medidas de seguridad de las que venía observando mientras conducía su vehículo." En apoyo de este argumento citan el caso de *Cantrell* v. *H. G. Hill Stores*, 193 So. 389, (La.). (3)

Este argumento se encuentra con la dificultad de que los hechos en el caso de *Cantrell*, supra, no son similares a los que el juez sentenciador consideró probados en el caso de au-

_____

(2) Leyes de Puerto Rico de 1946, pág. 599.

(3) En *Cantrell et al* v. *H. G. Hill Stores*, supra, un niño de 10 años conducía su bicicleta con su hermanita de 12 años montada en el tubo de la misma, o sea, la barra de metal entre el manubrio y el sillín. Un camión que caminaba en la misma dirección de la bicicleta, conducido por el chófer del demandado en el desempeño de sus funciones pasó a la bicicleta a una distancia de 3 ó 4 pies, a la izquierda de la misma. El camión iba a una velocidad moderada (15 a 25 millas por hora). El camión no tocó bocina

tos. Por consiguiente, la doctrina de aquel caso es inaplicable a éste a no ser que llegáramos a la conclusión de que el accidente ocurrió en la forma explicada por los demandados. Por supuesto, para ello tendríamos que rechazar las conclusiones de hecho de la corte a quo a base de que son claramente erróneas porque las mismas están basadas fundamentalmente en testimonio oral. Regla 52(a) de las de Enjuiciamiento Civil. Sin embargo, después de estudiar cuidadosamente el récord no hemos quedado firme y definitivamente convencidos de que se ha cometido un error. Por tanto, no debemos alterar en apelación dichas conclusiones. *Cf. United States* v. *Oregon Medical Society*, 343 U. S. 326; *United States* v. *United States Gypsum Co.*, 333 U. S. 364; *McAllister* v. *United States*, 348 U. S. 19.

En vista de todas estas consideraciones no podemos convenir con los apelantes en que la corte a quo cometiera error manifiesto al apreciar la prueba y al concluir que el codemandado Armando Mena Buxeda fué culpable de negligencia y en su consecuencia no nos inclinamos a alterar el resultado del caso. Véase, entre otros casos, los de *López* v. *Am. Railroad Co. of P. R.*, 50 D.P.R. 1; *Torres Pérez* v. *White Star Bus Line*, 50 D.P.R. 712; *Reyes* v. *Umpierre*, 50 D.P.R. 403; *Mason* v. *White Star Bus Line*, 50 D.P.R. 833; *Rivera* v. *Colón*, 58 D.P.R. 158; *Bernard* v. *P. R. Ry. Light & P. Co.*, 60 D.P.R. 218; *Pillot* v. *White Star Bus Line*, 59 D.P.R. 160.

*La sentencia apelada será confirmada.*

El Juez Asociado Sr. Ortiz no intervino.

---

porque no lo creyó necesario dado el amplio espacio para pasar. Cuando ya el frente del camión había rebasado la bicicleta y la rueda trasera estaba en línea con ella, ésta última (la bicicleta) se desvió hacia la izquierda y chocó con la parte trasera del camión.

Se resolvió que no fué negligente el chófer al no tocar bocina, no empece una ordenanza municipal que exige que se toque bocina al pasar. Habiendo mucho tránsito y no habiendo obstrucción al paso de la bicicleta el chófer no tenía que anticipar que el niño se desviaría hacia la izquierda.